UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ELOIS PALMER, | § | |
| | § | |
|     *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-09-3194 |
| | § | |
| PSC INDUSTRIAL OUTSOURCING, L.P., | § | |
| | § | |
|     *Defendant*. | § | |

**ORDER**

Pending before the court is defendant PSC Industrial Outsourcing, L.P.'s ("PSC") motion for partial summary judgment. Dkt. 15. Having considered the motion, response, reply, and applicable law, the court is of the opinion that the motion should be DENIED.

**I. BACKGROUND**

PSC provides industrial cleaning services which primarily consists of cleaning chemical tanks, and it has a transportation division that transports materials to its clients. Dkt. 15. Plaintiff Elois Palmer worked for PSC as a dispatcher for the industrial cleaning group from February 28, 2008, through July 10, 2009. Dkt. 1. As a dispatcher, Palmer was sometimes on call in the evenings and over the weekend. Dkt. 1. She claims that she received overtime pay for the extra hours that she worked on the weekend, but that she did not receive overtime for the extra hours that she worked during the week. Dkt. 18. Palmer states that she made several oral complaints about the failure to pay overtime, starting in early 2008, and that she received no satisfactory answer. *Id.* Instead, the people to whom she complained kept telling her that they would "look into it." Dkt. 16 at 72:20-24. In March 2009, Gary Orsak had just become Texas General Manager of PSI and was meeting with all PSI employees. Dkt. 18. Palmer claims that she complained about not being paid overtime for

on-call time Monday through Friday and that Orsak, like the people to whom she had previously complained, indicated that he would "look into it." *Id.* In May or June of 2009, Palmer again spoke with Orsak about weekday overtime, and he allegedly told her that he was still trying to get the terminal in order and to give him some time. *Id.*

In June 2009, Palmer worked 2 hours of overtime, and, according to Palmer, when she asked her supervisor, Craig Long, whether she should document it as overtime or comp time, Long told her that it was overtime and scratched "comp time" off of her timesheet. *Id.* Long signed the timesheet, but he gave her an Employee Warning/Disciplinary Report the next day for working overtime without prior authorization. *Id.* Palmer had a confrontation with Long about the disciplinary report and told him that she would "sue the company before [she] would sign that document." *Id.* & Exh. 1. After this confrontation, Palmer describes her relationship with Long as "strained." Dkt. 18.

On July 8, 2009, Palmer states that she saw an internal job posting for a transportation dispatcher at a different PSC location. Dkt. 18, Exh. 1. She claims that she asked Long and Orsak if she could apply for the position on July 9, 2009 and that they responded in the affirmative. *Id.* The following day, she received a reduction-in-force letter, terminating her employment. *Id.* She brought this lawsuit on October 2, 2009, alleging violations of the Fair Labor Standards Act overtime provisions as well as wrongful termination. Dkt. 1. She contends that PSC terminated her employment because she complained about not receiving overtime. Dkt. 1.

PSC claims that Palmer did not complain about PSC failing to properly pay her overtime in 2008, as she stated in her deposition. Dkt. 15. Rather, according the PSC, Palmer did not raise concerns about overtime with Craig Long until May 2009. *Id.* Long allegedly "immediately commenced an investigation concerning Palmer's complaint and discovered that PSC had incorrectly

2

calculated Palmer's on-call time." *Id.* PSC then informed Palmer about the mistake via a memorandum, which she signed; the memorandum indicates that Palmer would be receiving the unpaid funds in her next check. *Id.* & Exh. 3. According to Palmer, this payment was for approved overtime and not for the overtime that PSC had failed to pay for extra hours worked during the week. Dkt. 18.

PSC claims that Hurricane Ike "deeply impacted the operations of PSC's industrial clients, which substantially reduced their needs for PSC's services. Dkt. 15, Exh. 3. PSC therefore "was forced to aggressively control its expenses." *Id.* By July 2009, PSC had laid off approximately 50% of its Deer Park workforce. Dkt. 15. Palmer claims that Orsak met with the remaining employees at the Deer Park terminal some time in May 2009 and advised them that there were "not going to be any more layoffs and [the remaining employees] could 'all stop walking on egg shells.'" Dkt. 18. However, according to PSC, it had to consolidate the two remaining dispatcher positions at Deer Park in July 2009 due to the economic downturn. The two remaining dispatchers were Palmer and Nick Hinojosa. *Id.* PSC claims that it chose to terminate Palmer's employment rather than Hinojosa's because Hinojosa had been employed by PSC longer than Palmer. Dkt. 15.

## II. LEGAL STANDARDS

### A. Summary Judgment

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Carrizales v. State Farm Lloyds*, 518 F.3d 343, 345 (5th Cir. 2008). The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; there must be an absence of any genuine issue of material

3

fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S. Ct. 2505 (1986). An issue is "material" if its resolution could affect the outcome of the action. *Burrell v. Dr. Pepper/Seven Up Bottling Grp., Inc.*, 482 F.3d 408, 411 (5th Cir. 2007). "[A]nd a fact is genuinely in dispute only if a reasonable jury could return a verdict for the non-moving party." *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006).

The moving party bears the initial burden of informing the court of all evidence demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986). Only when the moving party has discharged this initial burden does the burden shift to the non-moving party to demonstrate that there is a genuine issue of material fact. *Id.* at 322. If the moving party fails to meet this burden, then it is not entitled to a summary judgment, and no defense to the motion is required. *Id* . "For any matter on which the non-movant would bear the burden of proof at trial . . . , the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Transamerica Ins. Co. v. Avenell* , 66 F.3d 715, 718–19 (5th Cir. 1995); *see also Celotex*, 477 U.S. at 323–25. To prevent summary judgment, "the non-moving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348 (1986) (quoting Fed. R. Civ. P. 56(e)).

When considering a motion for summary judgment, the court must view the evidence in the light most favorable to the non-movant and draw all justifiable inferences in favor of the non-movant. *Envtl. Conservation Org. v. City of Dallas, Tex.*, 529 F.3d 519, 524 (5th Cir. 2008). The court must review all of the evidence in the record, but make no credibility determinations or weigh any evidence; disregard all evidence favorable to the moving party that the jury is not required to

4

believe; and give credence to the evidence favoring the non-moving party as well as to the evidence supporting the moving party that is uncontradicted and unimpeached. *Moore v. Willis Ind. Sch. Dist.*, 233 F.3d 871, 874 (5th Cir. 2000). However, the non-movant cannot avoid summary judgment simply by presenting "conclusory allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation." *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). By the same token, the moving party will not meet its burden of proof based on conclusory "bald assertions of ultimate facts." *Gossett v. Du-Ra-Kel Corp.*, 569 F.2d 869, 872 (5th Cir. 1978); *see also Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1221 (5th Cir. 1985).

**B.     FLSA Retaliation**

Cases in which the plaintiff alleges retaliation for engaging in protected activity under the FLSA, like Title VII cases, are analyzed under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817 (1973). *Hagan v. Echostar Satellite, L.L.C.*, 529 F.3d 617, 624 (5th Cir. 2008). A plaintiff must first make a *prima facie* showing of retaliation. *Id.* A plaintiff may establish a *prima facie* case of retaliation under the FLSA by showing "(1) participation in a protected activity under the FLSA; (2) an adverse employment action; and (3) a causal link between the activity and the adverse action." *Id.* If the plaintiff meets that burden, the defendant must produce a legitimate, nondiscriminatory reason for its adverse employment decision. *Id.* Once the defendant has met this burden, the burden shifts back to the plaintiff, who must "demonstrate that the proffered reason is a pretext for discrimination." *Id.*

### III. ANALYSIS

PSC argues that Palmer's retaliation claim should be dismissed because (1) oral complaints are not protected by the FLSA; and (2) there is no causal connection between Palmer's oral complaints and her termination. Dkt. 15.

**A.    Oral Complaints**

In order to make a viable claim for discrimination under the FLSA, one must prove that he or she engaged in protected activity under section 215(a)(3). *Hagan*, 529 F.3d at 624. In the Fifth Circuit, "an informal, internal complaint" constitutes protected activity under section 215(a)(3). *Id.* at 626. However, "not all abstract grumblings or vague expressions of discontent are actionable complaints." *Id.* (citations and internal quotations omitted). In order to be considered protected activity, an informal complaint must concern some violation of the law. *Id.*; *see Truex v. Hearts Communications, Inc.*, 96 F. Supp. 2d 652, 666 (S.D. Tex. 2000) (Rosenthal, J.) (finding that an employee engaged in protected activity when he "complained about overtime pay to his supervisor on several occasions, specifically claiming at least twice that the [employer's] failure to pay him overtime was against the law").

Here, it is clear that Palmer's complaints were more than "abstract grumblings or vague expressions of discontent." Palmer states that when she initially learned that she would not be paid overtime for on-call hours worked during the week in March 2008, she told her supervisor, Brian Hankins, II, that it was not legal.[1] Dkt. 18 Exh. 1. Hankins allegedly stated that he would "look into

---

[1] PSC presents an affidavit from Chad Haddock, Director of Human Resources, in which he states that "Palmer did not complain about any of PSC's overtime practices in 2008." However, Palmer claims she complained to Hankins, Hayward, and Long in 2008, not Haddock. PSC does not provide any affidavits from Hankins and Hayward, and Long's affidavit does not mention, one way or the other, whether he received any complaints about overtime from Palmer in 2008. *See* Dkt. 15, Exh. 3.

it." *Id.* Palmer claims that, in May 2008, she told Long, who was Transportation Manager at the time, that PSC was not paying her overtime for the time she was on call Monday through Friday. *Id.* Long allegedly agreed that this was not fair and told her that "things were going to change soon." *Id.* Palmer states that she complained again to Long in January or February of 2009, and that Long said "not to worry that changes were coming." *Id.* Palmer also asserts, without mentioning a date, that there was a poster in the dispatch room about the FLSA and that she told Hankins, Elijah Hayward (an account manager), or Long that PSC was violating the FLSA by not paying her overtime for the extra hours she worked when she was on call Monday through Friday. *Id.* Palmer claims that in March 2009 she told Gary Orsak, who was about to become the Texas General Manager, that she did not "agree with the fact [that she] was not being paid for on call time Monday through Friday." *Id.* Orsak allegedly told her that he would "look into things." *Id.* In May or June 2009 Palmer again asked Orsak about the issue and he allegedly told her that "he was trying to get the terminal in order and just give him some time." *Id.* Around this same time, Palmer also asked Hankins, who was being transferred to the corporate office, whether he would "lie in Court." *Id.* Hankins allegedly stated that he would not and then advised Palmer to "not even think about suing the company because [PSC is] 'lawyer heavy.'" *Id.* Less than a month before PSC terminated Palmer's employment, Long, who had become Palmer's supervisor, gave her a disciplinary report to sign for working overtime without first obtaining approval. *Id.* Palmer claims that she "lost it" and said, "Have you lost your mind? . . . I have been putting up with everyone promising that they would look into the overtime issue and no one ever does. I'll sue the company before I sign that document." *Id.* These complaints, though informal, clearly alleged a violation of the law. Moreover, Palmer complained to multiple individuals, including upper management, so the complaints should not have been perceived as vague expressions of discontent. Thus, under the Fifth

7

Circuit standard, Palmer's complaints were "protected activity" under the FLSA.

PSC argues that this court should follow *Kasten v. Saint-Gobain Performance Plastics Corp.*, 570 F.3d 834 (7th Cir. 2009), in which the Seventh Circuit held that a complaint can only be considered "protected activity" under section 15(a)(3) if it is in writing. 570 F.3d at 839. However, this argument was made before the Supreme Court issued its ruling in the *Kasten* appeal. On March 22, 2011, the Supreme Court issued a slip opinion vacating the Seventh Circuit opinion in *Kasten* and holding that to "fall within the scope of the antiretaliation provision [of the FLSA], a complaint must be sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for their protection. This standard can be met . . . by oral complaints as well as written ones." *Kasten v. Saint-Gobain Performance Plastics Corp.* No. 09-834, 563 U.S. ___, slip op. at 12 (Mar. 22, 2011). Palmer's oral complaints that she was not being paid overtime for hours worked in excess of 40 hours during the week was sufficiently clear and detailed for a reasonable person to understand the complaints as an assertion of her rights under the statute, particularly in light of her reference to the FLSA poster and lawsuits. Moreover, Palmer states that people to whom she complained either agreed or promised to look into it, which indicates that they understood her complaints. Thus, the complaints were "protected activity" under the FLSA.

**B.     Causal Connection**

PSC also argues that summary judgment should be granted in its favor because Palmer cannot establish a causal connection between her oral complaints and her termination. Dkt. 15. In order to show causation in an FLSA retaliation case, the "employee must prove that the adverse employment action would not have occurred 'but for' plaintiff's protected activity." *Kanida v. Gulf Coast Med. Personnel LP*, 363 F.3d 568, 580 (5th Cir. 2004). PSC argues that Palmer cannot prove

8

that she was eliminated from her position because of her alleged overtime complaints. Dkt. 15. PSC notes that Palmer does not have any direct evidence that her position was eliminated in retaliation for her complaints about lack of overtime pay, and PSC argues that Palmer cannot establish the causal connection between her termination and protected activity circumstantially by showing the temporal proximity between her alleged complaints and PSC's decision to eliminate her position, as she allegedly began complaining about the problem in March 2008, but her employment was not terminated until July 2009. *Id.* Alternatively, PSC argues that it had a legitimate, nondiscriminatory reason for eliminating Palmer's position—the economic downturn following Hurricane Ike. *Id.* PSC asserts that Palmer cannot show that this reason is pretext and that the real reason her position was eliminated was retaliatory. *Id.*

### 1. *Prima Facie* Burden.

Palmer claims that the temporal proximity between her *last* complaint and her termination satisfies the *prima facie* causation prong. Dkt. 18. The Fifth Circuit has stated that "[c]lose timing between an employee's protected activity and an adverse action against him [or her] may provide the 'causal connection' required to make out a *prima facie* case of retaliation." *Swanson v. Gen. Servs. Admin.*, 110 F.3d 1180, 1188 (5th Cir. 1997). The Fifth Circuit has held that a time lapse of five days is sufficient to provide a "causal connection" enabling a plaintiff to satisfy the third prong of the *prima facie* case of retaliation. *See Evans*, 246 F.3d at 354. Furthermore, district courts in this circuit have found that a time lapse of up to four months is sufficient. *See Weeks v. NationsBank, N.A.*, No. CIV.A. 3:98-CV-1352M, 2000 WL 341257, at *3 (N.D. Tex. Mar. 30, 2000) (citing *Garrett v. Constar Inc.*, No. Civ.A 3:97-CV-2575, 1999 WL 354239, at *5 (N.D. Tex. May 25, 1999)). Palmer admits that she started complaining about the lack of overtime pay over a year before her termination. Dkt. 18. However, she states that her complaints became more specific and

more threatening as time progressed, and that by May and June 2009 "she was claiming that the company was violating the FLSA and threatening to file suit." Dkt. 18. Additionally, Palmer did not escalate her complaints to upper management until March of 2009. *Id.* Moreover, Palmer reiterated her complaint to upper management in May 2009 and began talking about lawsuits in May and June 2009. *Id.* Additionally, Palmer was corresponding with Chad Haddock (Director of Human Resources) about her complaints regarding overtime pay in "the days prior to her termination." *Id.*

If the only evidence of temporal proximity were that Palmer complained about not being paid for all of the overtime she worked over a year before her position was terminated, the court would agree that she cannot meet her *prima facie* burden. However, the initial complaints are not the only complaints Palmer claims she made. And, her initial complaints, which did not mention violations of the FLSA, may not even constitute "protected activity" under the standard enunciated by the Supreme Court in *Kasten*. The complaints that are relevant to this portion of the analysis are the complaints occurring closer to the time that PSC terminated Palmer's employment, as it is clear that once she escalated her complaints to upper management and began discussing filing a lawsuit, she was "filing a complaint" and thus engaging in "protected activity." Palmer alleges that she first informed Orsak about her complaints in March 2009, reiterated her complaint to Orsak in May or June 2009, thus ensuring that he knew it was not an "abstract grumbling or vague expression of discontent," and told Long that she would take PSC to court rather than signing the paper relating to overtime in June 2009. The court finds that these oral complaints were close enough in time to PSC's decision to terminate Palmer's employment to meet Palmer's *prima facie* burden of showing causation.

### 2. Legitimate Nondiscriminatory Reason/Pretext

PSC claims that it had a legitimate, nondiscriminatory, and nonretaliatory reason for terminating Palmer's employment. Dkt. 15. Specifically, PSC presents affidavits from Haddock and Orsak indicating that "PSC was still under pressure to reduce labor costs at Deer Park" in July 2009, and that it was therefore required to consolidate the two remaining dispatcher positions. Dkt. 15, Exhs. 1, 4. Haddock and Orsak claim that PSC selected Palmer for reduction-in-force because the other dispatcher had a longer tenure at PSC than Palmer. *Id.* These affidavits are sufficient to meet PSC's burden of producing a legitimate, nondiscriminatory, and nonretaliatory reason for terminating Palmer's employment.

Palmer claims that this reason is merely pretext and that the real reason PSC terminated her employment is because she complained about not receiving overtime pay for the hours that she worked in excess of 40 per week. Dkt. 18. Palmer acknowledges that PSC had a reduction in force between March and June of 2009, but she claims that the layoffs were over by the time her employment was terminated. *Id.* As evidence, she claims in her affidavit that (1) Gary Orsak told her that the layoffs were over; (2) she heard Long say, the week before she was terminated, that PSC was rehiring one employee and "bringing on another employee"; and (3) PSC posted a transportation dispatcher job—for which she was qualified—the day before PSC terminated her employment.[2] *Id.*, Exh. 1. Palmer also points out that even if the economic downturn were the reason for terminating her position, not transferring her to the other open position for which she was qualified was an adverse employment action that supports her claim for retaliation. Dkt. 18.

---

[2] The claim that there was an open transportation dispatcher position elsewhere in the company posted the day before PSC terminated Palmer's employment is not in conflict with Haddock's and Orsak's affidavits, as they claim that "PSC was still under pressure to reduce labor costs *at Deer Park*." Dkt. 15, Exhs. A, D.

11

PSC takes issue with Palmer's claim of pretext, arguing that (1) Palmer's allegation that there was an open transportation dispatcher position is merely conclusory, containing no specific facts; (2) Palmer's allegation that PSC's failure to transfer her to the alleged open transportation dispatcher position is an adverse employment action is untimely, and it would be prejudicial to allow the claim at this point in the litigation; and (3) Palmer's affidavit conflicts with her deposition testimony and is therefore a "sham affidavit." The court will address each of these arguments in turn.

***a. Conclusory Allegations.*** The only evidence that Palmer cites to in support of her claim that there was an open transportation dispatcher position for which she was qualified that PSC could have transferred her to rather than terminating her employment is her affidavit. Dkt. 18. PSC argues that the affidavit is not competent evidence to rebut the affidavits PSC attached in support of its motion because Palmer offers only conclusory allegations. Dkt. 19. A party opposing summary judgment "must meet the movant's affidavits with opposing affidavits that set out specific facts showing an issue for trial." *Travelers Ins. Co. v. Liljeberg Ents., Inc.*, 7 F.3d 1203, 1206-07 (5th Cir. 1993). However, "conclusory allegations supported by a conclusory affidavit will not suffice to require a trial." *Shaffer v. Williams*, 794 F.2d 1030, 1033 (5th Cir. 1986). For example, in *Shaffer v. Williams*, the Fifth Circuit held that an affidavit that was "so abstract as to be practically meaningless" failed to raise an issue of material fact. *Id.* PSC claims that Palmer's affidavit is similarly inadequate because it does not provide details about the allegedly open position, Palmer's qualifications for the position, or the posting.

While Palmer's affidavit does not paint a vivid picture of where the posting was located, what the requirements were for the position, or why she was qualified, it does assert facts sufficient to show an issue for trial. Palmer's affidavit provides the following details:

12

> On July 8, 2009, I saw a job posting for a transportation dispatcher for PSC, which was my specialty. PSC requires that you get permission prior to requesting an intercompany transfer. On July 9, 2009 I asked Long and Orsak whether I could apply for the position as a transportation dispatcher, because it would be a better fit, and they said sure go ahead. I called human resources to be sure the job had not been filled. The next day I was terminated for an alleged reduction in force.

Dkt. 18, Exh. 1. Since Palmer alleges that the posting was for a transportation dispatcher, she was a dispatcher, and she specifically claims that she felt the other position would be a "better fit," she sufficiently alleges that there was an opening for which she was qualified.[3]

### b. Timeliness of Failure to Transfer Allegation.

PSC asserts that Palmer "contends for the first time in her Response that, 'the refusal to allow her to transfer to another open position within the company for which she was qualified is an adverse employment action that supports her retaliation claim.'" Dkt. 19 (quoting Dkt. 18). PSC argues that this "attempted expansion of [Palmer's] Complaint is untimely because the Court's deadline for amending pleadings was April 5, 2010." *Id.* PSC claims that allowing Palmer to expand her claims at this point in the litigation would be "extremely prejudicial." *Id.* PSC's claim of prejudice is unfounded. Palmer specifically alleges in paragraph 13 of her complaint, dated October 2, 2009, that she "continued to question the company's policy of not paying her overtime for all of the hours she worked in excess of 40 hours per week. Because she received no satisfactory answer with regard to the failure to pay her overtime, Palmer applied for an inter-company transfer on July 9, 2009. The following day she was terminated as a 'reduction in force,' consisting of only her position." Dkt. 1 ¶ 13. While paragraph 16 of the

---

[3] PSC had ample opportunity to obtain more details about these allegations when it deposed Palmer, as she specifically stated that she "applied on the 9th for [an] intercompany – another position. I had to ask permission and I did and they asked me why I wanted to do that and I told them because I felt like that . . . my stronger point was dispatching/trucking and they said: Okay. No problem. And the next day, I received a reduction-in-force letter." Dkt. 16 at 70. It appears, from the portion of the deposition provided to the court, that PSC's counsel did not ask Palmer any more questions about the posting. *See* Dkt. 16.

13

complaint states that "PSC terminated Palmer in retaliation for complaining about its failure to pay overtime wages as provide [sic.] for by the Fair Labor Standards Act" and does not expressly state that PSC failed to grant her transfer prior to termination, the stated facts, combined with the cause of action, clearly put PSC on notice that Palmer was alleging that PSC terminated her employment, rather than transferring her, in violation of the FLSA.

Moreover, during Palmer's deposition, Palmer specifically mentioned that she believed that she was terminated, in part, because she requested the transfer. Dkt. 16 at 70-71. Thus, even if Palmer's complaint had not set forth the facts relating to the transfer request, PSC knew on May 24, 2010, when it took Palmer's deposition, that she believed her request for a transfer played a role in her termination. This testimony placed PSC on notice that its failure to transfer Palmer to an open position for which she claims she was qualified could be considered an adverse employment action, particularly when combined with the fact that PSC terminated her employment the following day. PSC argues that Palmer did not specifically complain during her deposition that PSC "*retaliated* against her by refusing to transfer her to another position; rather, [Palmer] testified that PSC terminated her, in part, because she applied for the transfer, which, coincidentally, is not 'protected activity' under the FLSA."[4] Dkt. 19 (emphasis added). Palmer, however, is not required to make her case to opposing counsel or draw legal conclusions during her deposition. She is simply required to answer the questions that are posed.

*c. "Sham Affidavit."* PSC claims that Palmer's affidavit is a sham affidavit because it directly contradicts her deposition testimony. Dkt. 19. It is well established in the Fifth Circuit that

---

[4] Requesting a transfer is, indeed, not a "protected activity" under the FLSA. However, terminating an employee's employment rather than transferring the employee to an open position for which the employee is qualified, after the employee has complained about alleged FLSA violations, can be considered an adverse employment action under the FLSA.

a "nonmovant cannot defeat a motion for summary judgment by submitting an affidavit which directly contradicts, without explanation, his previous testimony." *Albertson v. T.J. Stevenson & Co., Inc.*, 749 F.2d 223, 228 (5th Cir. 1984) (citing *Kennett-Murray Corp. v. Bone*, 622 F.2d 887, 894 (5th Cir. 1980)). PSC claims that Palmer's affidavit "suggests that PSC actually hired two employees to replace her." Dkt. 19 (citing Palmer Aff. 5). Yet, in her deposition, Palmer stated that she could not "confirm that they [the two employees] were to replace [her]." *Id.* (citing Palmer Dep. 72:9-13). However, a review of the affidavit and testimony reveals that Palmer did not contend, in either document, that PSC hired the two employees to replace her. In Palmer's deposition, PSC's counsel asked Palmer if she knew "whether anyone was hired to replace [her] after [she] was terminated?" She replied, "I know they hired two more employees. I don't know if – I can't confirm that they were to replace me." Then, PSC's counsel asked Palmer who PSC hired, and Palmer responded, "They hired Eddie Garcia; and the other gentleman, I'm not sure of his name. He – they used to work for PSC." Dkt. 16 at 72:9-16. In her affidavit, Palmer similarly stated, "Although PSC claims I was terminated as part of a reduction in force, the week before I [was] terminated I heard Craig Long tell another employee that they were re-hiring Eddie Garcia and bringing on another employee. Likewise there was an open dispatch position which I could fill." Dkt. 18, Exh. A. The deposition testimony and affidavit are not in conflict. Thus, Palmer's affidavit is not a sham affidavit.

The court finds, viewing the evidence in the light most favorable to Palmer, that there is an issue of material fact with regard to whether PSC's one-person reduction-in-force is pretext. First, PSC claims that its termination of Palmer's employment was a "reduction-in-force," but a reasonable person could find that this reduction-in-force of only one person when layoffs were otherwise over was retaliatory. *Cf. Best v. GTE Directories Serv. Corp.*, No. A.3:92-CV-0163-D, 1993 WL

13143213, at *5 (N.D. Tex. Mar. 19, 1993) (holding that a "reasonable trier of fact could find retaliation" from evidence that the plaintiff was the only person dismissed from a special team during a reduction-in-force). Second, Palmer's claim in her affidavit that PSC posted an opening for a transportation dispatcher position for which she was qualified and, rather than transferring her to that position, terminated her employment, is sufficient to raise an issue of material fact with regard to whether PSC's claim that it terminated her employment because it needed to reduce staffing costs at the Deer Park facility is pretext. While PSC may have needed to reduce costs at the Deer Park facility in July 2009, Palmer's affidavit indicates that there was an opening for which she was qualified elsewhere in the company and that she informed Long and Orsak that she was going to apply for the open position. If Orsak felt pressure, as he states in his affidavit, to reduce labor costs at Deer Park, Palmer's announcement that she was seeking a transfer should have alleviated that pressure. There is no evidence in the record that the pressure to reduce costs was so intense that Orsak could not wait to see if Palmer's transfer request came through before terminating her employment.

## IV. Conclusion

Because Palmer engaged in "protected activity" under the FLSA and she has raised an issue of material fact with regard to her claim of pretext, PSC's motion for summary judgment is **DENIED**.

Signed at Houston, Texas on March 30, 2011.

_____
Gray H. Miller
United States District Judge